Dr. T. Kenneth James, Director Arkansas Department of Education #4 State Capitol Mall Little Rock, AR 72201-1071
Dear Dr. James:
You have requested my official opinion on the following questions concerning Act 69 of the Second Extraordinary Session of 2003 (which added the current versions of A.C.A. § 6-20-2001 through -2007):[1]
 (1) If a bond was issued by a "qualified school district" under A.C.A. § 6-20-2003(8) and this issue is subsequently refunded with a non-voted refunding issue outside the dates shown in A.C.A. § 6-20-2003(8)(A) and (B), is the district still eligible to receive debt service funding supplement on the debt with the higher annual payment as described in A.C.A. § 6-20-2003(9)(A)?
 (2) If a bond issue was issued by a "qualified school district" under A.C.A. § 6-20-2003(8)(A) and (B), and this issue is subsequently refunded with a voted combination project and refunding issue outside the dates shown in A.C.A. § 6-20-2003(8), is the district still eligible to receive debt service funding supplement on the new debt payment pursuant to A.C.A. § 6-20-2003(9)(B)?
 (3) According to A.C.A. § 6-20-2003(9)(A), the payment schedule of the "issue being refunded" will be compared to the payment schedule of the "refunding issue." This applies to non-voted refunds that are completed in order to produce interest savings and reduce the annual payments. If bonds are refunded more than once, will the comparison be made to the original issue with the largest payments or the second issue with the second largest payments?
RESPONSE
Question 1 — If a bond was issued by a "qualified school district" underA.C.A. § 6-20-2003(8) and this issue is subsequently refunded with anon-voted refunding issue outside the dates shown in A.C.A. §6-20-2003(8)(A) and (B), is the district still eligible to receive debtservice funding supplement on the debt with the higher annual payment asdescribed in A.C.A. § 6-20-2003(9)(A)?
It is my opinion that under the circumstances you have described, the district would not be eligible to receive the debt service funding supplement.[2]
This conclusion is based wholly upon the plain language of Act 69 of the Second Extraordinary Session of 2003 (A.C.A. § 6-20-2001 through -2007).
The provision of Act 69 on which your question focuses, A.C.A. §6-20-2003(9)(A), is part of the "Definitions" section of the Act. That section states:
 (9) "Scheduled debt payment" means the scheduled debt payment on bonded debt issued on or before May 30, 2004, for the following calendar year, not including mandatory callable bonds on file with the Department of Education as of May 30 of the previous year. The scheduled debt payment shall be adjusted by the department as follows:
 (A) In the case of a nonvoted refunding bond issue, the payment schedule of the issue being refunded will be compared to the payment schedule of the refunding issue. The schedule with the higher annual debt payment will be used for the purposes of calculating eligible debt service mills required if the district has provided to the department a signed certificate concerning the use of the debt service savings in conformity with § 6-20-2004[.]
A.C.A. § 6-20-2003(9)(A) (Acts 2003, No. 69, § 1 (2nd Ex. Sess.)) (emphasis added).
In order to examine how the quoted provision fits in with the overall purpose of Act 69, it is necessary to examine that purpose. Act 69 appears to have been structured with the intent of giving school districts a choice between two different kinds of supplemental funding: either the "debt service funding supplement and general facilities funding," or "supplemental millage incentive funding." However, the Act clearly creates a time limit for the availability of the "debt service funding supplement." The "debt service funding supplement" is not available in connection with debt that was created after May 30, 2004. This conclusion is evident from several sections of the Act. First, the definition of the term "debt service funding supplement" states:
 (2) "Debt service funding supplement" means the state financial aid provided to qualifying local school districts for the purpose of reducing existing debt service burdens and increasing the amount of local revenue available for maintenance and operations expenditures[.]
Acts 2003, No. 69 of 2003, § 1 (2nd Ex. Sess.) (to be codified at A.C.A. § 6-20-2003(2)). A key term that is used in the above quoted definition is the term "qualifying local school district." This term is derived from the base term "qualified school district," which is defined for purposes of the Act as follows:
(8) "Qualified school district" means a school district that:
 (A) Issued bonds to finance school district projects before May 30, 2004, and for which outstanding bonds exist as of May 30, 2004;
 (B) Was approved by the Department of Education to issue bonds on or before December 31, 2003; and
 (C) Received debt service funding supplements pursuant to §§ 6-20-303 and 6-20-308 during school year 2003-2004 in accordance with regulations promulgated by the Department of Education;
Acts 2003, No. 69, § 1 (2nd Ex. Sess.) (to be codified at A.C.A. §6-20-2003(8)) (emphasis added).
It is clear that the debt service funding supplement is available only to "qualified school districts," and that a school district does not constitute a "qualified school district" for purposes of receiving the debt service funding supplement if its existing bonded debt was created after May 30, 2004.
This conclusion is bolstered by the fact that the section of the Act to which your question refers (A.C.A. § 6-20-2003(9)) addresses the manner in which "scheduled debt payment" is to be calculated, and the term "scheduled debt payment" refers only to payment on debt created on or before May 30, 2004. The full definition of the term "scheduled debt payment" states:
 (9) "Scheduled debt payment" means the scheduled debt payment on bonded debt issued on or before May 30, 2004, for the following calendar year, not including mandatory callable bonds on file with the Department of Education as of May 30 of the previous year.
Acts 2003, No. 69, § 1 (2nd Ex. Sess.) (to be codified at A.C.A. §6-20-2003(9) (emphasis added).
My conclusion is further bolstered by the fact that the exercise of determining the "higher annual payment," as provided for in A.C.A. §6-20-2003(9)(A) (which you specifically asked about), is to be engaged in for the purpose of calculating the "eligible debt service mills required." The term "eligible debt service mills required" is defined for purposes of the Act as follows:
 (3) "Eligible debt service millage required" means the debt service millage required for bonds issued before May 30, 2004, that is computed by dividing the scheduled debt payment by the total property assessment in the school district and then adding the result to the millage for mandatory callable bonds;
Acts 2003, No. 69, § 1 (2nd Ex. Sess.) (to be codified at A.C.A. §6-20-2003(3) (emphasis added).
All of the sections of Act 69 that are quoted above, when read in light of the Act's own definitions of the terms used therein, must be interpreted to conclude that the debt service funding supplement is not available in connection with debt on bonds that were issued after May 30, 2004. Thus, the calculation provided for in A.C.A. §6-20-2003(9)(A), which is the subject of your question, is not pertinent to the refunding bond issue that you described, because that bond issue (as you described it) took place after May 30, 2004.
I note that it is immaterial that the bonds that are being refunded were issued prior to May 30, 2004. The availability of the debt service funding supplement (and the pertinence of the calculation provided for in A.C.A. § 6-20-2003(9)(A)) turns on the date of creation of the currently existing debt, rather than on the date of creation of the debt that is being refunded.
Question 2 — If a bond issue was issued by a "qualified school district"under A.C.A. § 6-20-2003(8)(A) and (B), and this issue is subsequentlyrefunded with a voted combination project and refunding issue outside thedates shown in A.C.A. § 6-20-2003(8), is the district still eligible toreceive debt service funding supplement on the new debt payment pursuantto A.C.A. § 6-20-2003(9)(B)?
As discussed above in response to Question 1, it is my opinion that under the circumstances you have described, the school district would not be eligible to receive the debt service funding supplement. Accordingly, the provisions of A.C.A. § 6-20-2003(9)(B) would not be applicable to that school district.
Subsection (9)(B) states:
 (9) * * * The scheduled debt payment shall be adjusted by the department as follows:
* * *
 (B) If a voted refunding issue is combined with additional debt or extends the term of the original debt, the new payment schedule will be used for the purposes of calculating eligible debt service mills required[.]
A.C.A. § 6-20-2003(9)(B) (as amended by Acts 2003, No. 69, § 1 (2nd
Ex. Sess.))
For the reasons stated in response to Question 1, the statutory definitions of the terms "scheduled debt payment" and "eligible debt service mills required" plainly indicate that the above quoted section is applicable only to bonded debt that is issued on or before May 30, 2004. Accordingly, I must conclude that because the refunding bonds that you have described were not issued on or before May 30, 2004, the calculation provided for in A.C.A. § 6-20-2003(9)(B), quoted above, is not pertinent to that refunding bond issue.
Question 3 — According to A.C.A. § 6-20-2003(9)(A), the payment scheduleof the "issue being refunded" will be compared to the payment schedule ofthe "refunding issue." This applies to non-voted refunds that arecompleted in order to produce interest savings and reduce the annualpayments. If bonds are refunded more than once, will the comparison bemade to the original issue with the largest payments or the second issuewith the second largest payments?
Your question appears to presume a situation in which the last refunding bonds were issued after May 30, 2004. I reiterate that the calculation provided for in A.C.A. § 6-20-2003(9)(A) is not pertinent to or available in connection with any bonds that were issued after May 30, 2004.
In my opinion, it is unlikely that a situation has occurred involving multiple refunding bond issues that all occurred before May 30, 2004. The debt service funding supplement program was initiated in 1996. See Acts1995, No. 917. The bonds that were in existence in 1996 would not likely have been refunded twice between 1996 and 2004, because bonds cannot be refunded within the first five years of existence without losing their tax-exempt status. See 26 U.S.C. § 149(d). To my knowledge, multiple refundings did not occur prior to May 30, 2004.
However, if a school district did issue multiple refunding bonds before May 30, 2004, and the last issue was still outstanding on May 30, 2004, the provisions of A.C.A. § 6-20-2003(9)(A) will be applicable for purposes of calculating the appropriate debt service funding supplement. The language of that provision appears to indicate an intent that the comparison be made between the last two issues. Again, the calculation requires comparison between the payment schedules of the "refunding issue" and of the "issue being refunded." This language clearly contemplates a comparison between only the last two bond issues.
One further matter must also be considered in connection with the calculation of the debt service funding supplement. The provisions of A.C.A. § 6-20-2004(b) state:
 (b) A school district qualifying for debt service funding supplement under this section shall not lose any debt service funding supplement as a result of debt service savings produced by refunding outstanding bonds if:
 (1) The yearly savings produced by the refunding is deposited into a refunding savings building fund and is used by the district for the building and equipping of school buildings, for major adaptations to a facility, or for purchasing facility sites; and
 (2) Before the date that the refunding bonds are sold at public sale, the district submits a certificate to the Director of the Department of Education certifying that the yearly debt service savings will be used for the purposes described in this subsection (b).
A.C.A. § 6-20-2004(b) (Acts 2003, No. 69, § 1 (2nd Ex. Sess.)).
Although it is not entirely clear how the above quoted provision is to interact with the requirements of A.C.A. § 6-20-2003(9)(A), it is my opinion that in situations in which the calculation of A.C.A. §6-20-2003(9)(A) is available, the provisions of A.C.A. § 6-20-2004(b) must nevertheless control in the event of a conflict. The requirements of A.C.A. § 6-20-2004(b) are explicit and mandatory. The law does not address the question of how compliance is to be implemented in the event that the calculation of A.C.A. § 6-20-2003(9)(A) would result in a loss of debt service funding supplement. Until a court or the legislature has had opportunity to resolve this issue, a determination of the mechanics of compliance must be made on a case-by-case basis.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
[1] Throughout this opinion, I will refer to the codifications that are used in the language of Act 69 (i.e., A.C.A. § 6-20-2001 through -2007). The provisions of the Act may be codified in a different location than those that are stated in the Act.
[2] As discussed in Attorney General Opinion No. 2003-014, under the Arkansas Supreme Court's decision in Lake View School District v.Huckabee, 351 Ark. 31, 91 S.W.3d 472 (2002), debt service funding supplement can no longer be counted by school districts as part of the mandatory 25 mandatory mills that each district must dedicate solely to maintenance and operations.